UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LUZ ELENA CUADROS,<br><br>Plaintiff(s),<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant(s). | Case No. 2:16-CV-2025 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant State Farm Fire and Casualty Company's ("State Farm") amended motion to dismiss. (ECF No. 10). Plaintiff Luz Elena Cuadros filed a response (ECF No. 32), and State Farm filed a reply (ECF No. 37).

**I.     Introduction**

Plaintiff submitted a class action complaint in Nevada state court on June 23, 2016, in relation to State Farm's alleged practice of applying a reduced actual cash valuation for total loss vehicles by roughly 7% to reflect the purported difference between the sell price and the asking price of an automobile.[1] (ECF No. 1 at 20, 22). Plaintiff asserts that "[a] reasonable consumer of ordinary intelligence would not understand the reduction and would not, in fact, be able to negotiate approximately 7% off of the ask price of a vehicle. Accordingly, Defendant's practice is misleading and deceptive." (*Id.* at 25).

Plaintiff also brings this action to address the insurance policy terms between the two parties. (*Id.*). The various claims in her complaint are generally based on allegations that "State

---

[1] "Total loss vehicles" are those whose actual cash value is lower than the cost of repair. *See* (ECF No. 10).

Farm breached the express requirements of the Policy in settling her total loss claim" and "that the Policy contains an unconscionable mandatory appraisal clause." (ECF No. 32 at 7); *see also* (ECF No. 1).

Plaintiff specifically asserts the following claims on behalf of the purported class: (1) unfair trade practices under Nevada Revised Statute ("NRS") § 686A.310(1)(a), (e), (g), and (n); (2) violations of the Nevada Deceptive Trade Practices Act ("NDTPA"), NRS 598.0903(8), 598.0915(15), 598.0923(2), and 598.0923(3); (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) fraudulent misrepresentation, (6) unjust enrichment; and (7) injunctive and declaratory relief. (ECF No. 1).

Defendant's motion first argues that the complaint should be dismissed because these claims are subject to the Nevada insurance commissioner's exclusive jurisdiction, and plaintiff has not administratively exhausted her claims. (ECF No. 10 at 7). Second, defendant alleges that the complaint should be dismissed because plaintiff has not alleged damages, though a named class action plaintiff must identify the same. (*Id.* at 12). Next, it argues that plaintiff has not satisfied the heightened pleading standard as to "[h]er [f]raud-[b]ased [c]laims" and that plaintiff does not indicate what part of the insurance policy was violated by defendant's actions. (*Id.* at 15, 21).

Moreover, defendant requests that the contractual bad faith claim be dismissed because plaintiff's allegations involve the terms of the contact and the claim processing procedure. (*Id.* at 21–22). Finally, defendant posits that the contract prevents the unjust enrichment claim.[2] (ECF No. 10 at 22).

. . .

. . .

. . .

. . .

. . .

---

[2] Plaintiff's response will be discussed when relevant to the court's analysis. (ECF No. 32).

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard[3]

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

---

[3] Aside from limited references to Federal Rule of Civil Procedure 9(b), defendant does not clearly indicate the procedural basis for its motion to dismiss. *See* (ECF No. 10). The court construes this motion as one filed pursuant to Federal Rule of Civil Procedure 12(b)(6) because defendant attacks the sufficiency of plaintiff's allegations. *See generally* (*id.*).

> the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### a. Administrative exhaustion and NRS 686A.310 claims

Defendant asserts that *Allstate Ins. Co. v. Thorpe* forecloses plaintiff's claims because plaintiff has not administratively exhausted her claims, which are subject to the Nevada insurance commissioner's exclusive jurisdiction. *See* 170 P.3d 989, 996 (Nev. 2007); *see also* (ECF No. 10). However, that case explicitly allows suits "for tortious and contractual bad faith against first-party insurers." *Thorpe*, 170 P.3d at 996 (distinguishing these kinds of actions from those involving "private actions originating in district court claiming awards of statutory damages and interest under NRS 690B.012"); *see also Rathnayake v. Farmers Ins. Exch.*, No. 2-13-CV-765-JAD-GWF, 2014 WL 3897960, at *1 (D. Nev. Aug. 11, 2014). Moreover, *Thorpe* did not mention NRS 686A.310, and the terms of NRS 690B.012 are not relevant to this case. *See* 170 P.3d 989; *see also* Nev. Rev. Stat. § 690B.012.

However, it is true that NRS 686A.015 provides that, "[*n*]*otwithstanding any other provision of law*, the Commissioner has exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in this state." Nev. Rev. Stat. § 686A.015(1) (emphasis added); *see also Weaver v. Aetna Life Ins. Co.*, 370 F. App'x 822, 824 (9th Cir. 2010) (citing Nev. Rev. Stat. § 686A.015(1)) ("Any right to relief for [plaintiff's] claims alleging violation of the Nevada Insurance Code resides exclusively with the Insurance Commissioner . . . .").

Indeed, defendant cites to both *Herrera v. Allstate Fire & Cas. Ins. Co.* and *DeCastro v. Progressive N. Ins. Co.* in support of its exclusive-jurisdiction argument. *See* (ECF No. 10) (citing *Herrera*, No. 2:13-cv-00908-MMD, 2015 WL 1951753, at *2 (D. Nev. Apr. 28, 2015) (holding that an action requiring the court to evaluate the potential violation of an insurance regulation foreclosed private enforcement of the insurance code)); *DeCastro*, No. 2:14-cv-0983-APG-VCF, 2015 WL 1809164, at *2 (D. Nev. Apr. 13, 2015) ("Because all of Plaintiff's allegations relate to

Defendant's alleged violation of the Total Loss Regulation, any claim of wrongdoing on the part of Defendant would fall under the original jurisdiction of the [Nevada Division of Insurance].")).

Those cases are relevant to the instant case because, despite how plaintiff frames her first two claims for unfair trade practices and violations of the NDTPA, the factual subject matter underlying those claims generally involves topics entrusted by statute to the insurance commissioner. Nev. Rev. Stat. § 686A.015(1).

Furthermore, the private cause of action contemplated by NRS 686A.310(2) does not apply to plaintiff's allegations that the contents of the insurance contract rendered it unconscionable. *See Montes v. Bank of Am. NA*, No. 2:13-CV-00660-RCJ, 2014 WL 1494234, at *14 (D. Nev. Apr. 15, 2014) (citing *Schumacher v. State Farm Fire & Cas. Co.*, 467 F.Supp.2d 1090, 1095 (D. Nev. 2006)) (reasoning that NRS 686A.310(2) applies to how an insurer has acted to resolve a party's claim, not the form of the insurance offer). The title of that statutory provision refers to "[u]nfair practices in settling claims," not the formation of an insurance contract. *See id.* (citing *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1998) (considering a statute's title to discern its purpose)). Additionally, "by its own terms, NRS 686A.310(2) applies only to allegations related to the handling of an insured's claim." *Id.* at 14.

Therefore, plaintiff's argument that the contract terms—such as the use of the appraisal dispute resolution process—were unconscionable cannot be a basis for liability pursuant to NRS 686A.310(2) because a contract's facial propriety is an issue that predates the initiation of the insurer's claim settlement process. *See id.*

However, this analysis also clarifies that there is a statutory right to bring private suit here, depending on whether the claims involve the insurance settlement process. *See id.* Further, the manner of defendant's alleged calculation or application of the 7% discount is related to how plaintiff settled claims because that discount is applied during the course of resolving an insurance

- 5 -

claim.[4] *See* (ECF No. 1). Accordingly, the claims under NRS § 686A.310(1)(a), (e), (g), and (n) survive plaintiff's exhaustion argument.[5]

Defendant also attacks plaintiff's NRS 686A.310(1)(a) claims "because the Complaint lacks any allegations that State Farm misrepresented any 'facts or insurance policy provisions relating to any coverage at issue.'" (ECF No. 10 at 16) (emphasis removed). This argument is unpersuasive because plaintiff's complaint assails defendant's process for producing or calculating disbursements pursuant to coverage of a total loss vehicle. *See* (ECF No. 1). Consequently, the *manner* in which defendant determined coverage is at issue because plaintiff has alleged that defendant concealed the relevant 7% discount; therefore, these allegations are within the scope of NRS 686A.310(1) and (2). *See Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010).

Defendant next asserts that plaintiff's NRS 686A.310(1)(e) and (n) claims are unfounded because the governing insurance policy between the parties "does not obligate State Farm to use any particular methodology" to compute the disbursement value.[6] (ECF No. 10 at 17). Finally, defendant posits that it ultimately gave plaintiff a valuation report identifying the 7% discount and

---

[4] The court is cognizant of defendant's argument that plaintiff has failed to allege damages in this case. (ECF No. 10). However, the court disagrees with that argument because plaintiff has alleged that the 7% valuation decrease caused "damages to the extent that [plaintiff and potential class members] were not paid the full amount to which they were entitled." (ECF No. 1 at 38). The damages alleged are thus apparent from plaintiff's reference to the purported 7% discount.

[5] These claims are based on the following statutory excerpts. "Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." Nev. Rev. Stat. § 686A.310(1)(a). "Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." Nev. Rev. State § 686A.310(1)(e). "Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1)(g). "Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim." Nev. Rev. Stat. § 686A.310(1)(n).

[6] The possible conflict between the propriety of defendant's calculation, in light of state law, is discussed *infra*, in part III(c). It is sufficient here to note that this argument does not automatically prevent the instant claim.

that the third-party-appraisal award supports the inference that defendant overvalued its liability under the policy, to plaintiff's benefit.[7] *See* (*id.*).

The complaint's discussion of the allegedly opaque nature of the 7% reduction calculation sufficiently states a claim under NRS 686A.310(1)(e) and (g). The need to specifically request a form that does not elucidate how an automatic reduction in the disbursement value is calculated impacts an insurance settlement's "fairness" by reducing the settlement's value in a manner that a reasonable person would not expect from the policy terms. *See* Nev. Rev. Stat. § 686A.310(1)(e), (g); *see also* (ECF No. 1).

### b. NDTPA and fraud-related claims

#### i. Pleading allegations of fraud

Defendant accurately describes the heightened pleading requirements applicable to plaintiff's NDTPA claims pursuant to Federal Rule of Civil Procedure 9(b). *See* (ECF No. 10). Indeed, "[i]f plaintiff is filing for misconduct under [the NDTPA], the claim *must* be pled with particularity under Federal Rule of Civil Procedure 9(b)." *Horner v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-cv-269-JCM-GWF, 2012 WL 2017589 (D. Nev. June 5, 2012) (emphasis in original) (citing *Thorne v. Wagner*, Case No. 2:06-cv-492, 2007 WL 496373, at *3 (D. Nev. Feb. 13, 2007)).

Furthermore, "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).

Plaintiff has satisfied this pleading standard by identifying the span of time ("January 1, 2011 through July 31, 2016") at issue, the relevant place ("State of Nevada"), the parties involved with the purported fraud (State Farm as well as "[plaintiff] and all other similarly situated, for all claims alleged"), and has described the supposedly fraudulent act (the unexplained 7% discount

---

[7] As this court has already concluded that plaintiff's allegations regarding the policy appraisal dispute resolution process stem from the alleged unconscionability of that policy's terms, an issue not within the scope of NRS 686A.310(2), there is no need to consider defendant's arguments regarding NRS 686A.310(1)(e) and (n) as to the appraisal process.

James C. Mahan
U.S. District Judge

- 7 -

"to account for the average reduction in price supposedly obtained by the consumer when purchasing a vehicle from a car dealer.").[8] (ECF No. 1 at 8, 22, 28, 31).

*ii. NRS chapter 598 (NDTPA) claims*

Next, defendant contests plaintiff's allegations under NRS 598.092(8), 598.0923(2), 598.0923(3), 598.0915(15). Respectively, these statutes address the "[k]nowing[] misrepresent[ation of] the legal rights, obligations or remedies of a party to a transaction"; the "knowing[] . . . [f]ail[ure] to disclose a material fact in connection with the sale or lease of goods or services"; the "knowing[] . . . [v]iolat[ion of] a state or federal statute or regulation relating to the sale or lease of goods or services"; and the "knowing[] mak[ing of] any other false representation in a transaction." Nev. Rev. Stat. §§ 598.092(8), 598.0923(2), 598.0923(3), 598.0915(15).

Defendant argues that these statutes involve goods and services, while insurance falls into neither category. (ECF No. 10) (citing *Archer v. Bank of Am. Corp.*, No. 2:11-CV-1264 JCM-RJJ, 2011 WL 6752562, at *2 (D. Nev. Dec. 23, 2011). Therefore, it asserts those statutes do not apply here because Nevada possesses "its own independent statutory and regulatory framework" for the regulation of insurance, analogizing to cases from this district involving real estate transactions— a subject matter unrelated to automobile insurance. (*Id.* at 19) (citing NRS 686A.015(1)).

Although the District of Nevada has indicated that these statutes do not apply to real estate cases because the Nevada legislature has created a legal infrastructure that specifically governs "lending practices," *Reyes v. BAC Home Loans Servicing, LP*, No. 2:11-cv-01367-KJD, 2012 WL 2367803, at *2 (D. Nev. June 21, 2012), this comprehensive-regulation rationale has not clearly been extended to claims under NDTPA because the plain language of NDTPA—often referring to "goods or services"—has been sufficient to identify that statute's applicability.[9] *See Alexander v. Aurora Loan Servs.*, No. 2:09-cv-1790-KJD-LRL, 2010 WL 2773796, at *2 (D. Nev. July 8,

---

[8] Defendant has conceded that the complaint identifies the relevant span of time at issue. (ECF No. 1 at 12). This holding also neutralizes, in part, defendant's similar argument against plaintiff's fraudulent misrepresentation claim.

[9] This court has previously characterized NRS § 598.0915(15) as a "catch-all provision." *Baudoin v. Lender Processing Servs.*, No. 2:12-cv-114-JCM-CWH, 2012 WL 2367820, at *3 (D. Nev. June 21, 2012).

2010); *see also Morris v. Green Tree Servicing, LLC*, No. 2:14-cv-01998-GMN, 2015 WL 4113212, at *15 (D. Nev. July 8, 2015) (collecting cases).

Moreover, the case offered by defendant in support of this assertion, *Alexander*, does not cite any legal doctrine or canon of statutory interpretation when articulating defendant's offered theory regarding regulatory schemes. *See* 2010 WL 2773796, at *2. That case simply refers generally to statutes governing residential loans. *See id.* In sum, defendant has not shown that the presence of a purportedly comprehensive regulatory scheme automatically forecloses these NDTPA claims in all contexts.

Instead, plaintiff's claims under this statute are based upon defendant's alleged misrepresentation that "[defendant] would pay the actual cash value of [sic] subject to reduction only for 'any applicable deductible,' and by then applying additional deductions that were not identified or explained in the policy, such as a 7% reduction in the value of the insured's vehicle." (ECF No. 1 at 32).

Consequently, this allegation defeats defendant's argument that the eventual disclosure of the 7% discount absolves itself of liability from the instant claim. Plaintiff has plainly identified a possible "misrepresentation" that allegedly occurred during the course of settling an insurance claim. Thus, plaintiff presents an actionable claim under NDTPA, despite defendant's conclusory assertion that plaintiff has failed to do so.[10] (ECF No. 10); *see also* (ECF No. 1).

### iii. Fraudulent misrepresentation

Under Nevada law, a claim of fraudulent misrepresentation requires the plaintiff to establish each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant's basis for making the representation was insufficient); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance.

---

[10] The Ninth Circuit has suggested that the scope of NRS 686A.015's description of the insurance commissioner's adjudicatory powers is limited to the insurance code. *See Weaver v. Aetna Life Ins. Co.*, 370 F. App'x at 824. Additionally, it is not clear that "regulating the subject of [insurance] trade practices" also implies the authority to adjudicate any claim peripherally involving insurance. *See id.*; *see also* Nev. Rev. Stat. § 686A.015.

*First Nat. Bank of Ely v. Progressive Cas. Ins. Co.*, No. 3:11-cv-00859-RCJ, 2012 WL 5944847, at *6 (D. Nev. Nov. 27, 2012) (citing *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004)).

The previous subsection addresses most of defendant's arguments regarding the present claim. (ECF No. 10). However, defendant's remaining argument here is that plaintiff did not allege reliance on any misrepresentation. (*Id.*). Here, the court agrees with defendant.

Plaintiff's response and complaint fail to indicate how she relied on an alleged misrepresentation by defendant during the course of the claim-settlement process. *See* (ECF Nos. 1, 32). In fact, plaintiff did not accept defendant's proposed valuation; she contested the relevant calculation method and attempted to bring suit even before third-party appraisal had occurred. *See Cuadros v. State Farm Fire & Cas. Co.*, No. 2:14-cv-1247-JCM-PAL, 2014 WL 7338945, at *4 (D. Nev. Dec. 23, 2014); *see also* (ECF No. 32). Thus, this claim may not proceed.

### c. Breach of the covenant of good faith and fair dealing and breach of contract

"A contractual breach of covenant arises where a party to the contract honors the express terms, but deliberately contravenes the intent and spirit of the contract." *Tomkiel v. Hartford Cas. Ins. Co.*, No. 2:13-cv-1888-JCM-PAL, 2014 WL 1494248, at *2 (D. Nev. Apr. 14, 2014).

Defendant posits that the complaint failed to identify which policy terms defendant violated, discussing plaintiff's allegations regarding the calculation of "actual cash value." (ECF No. 10 at 20–21). According to defendant, this defect cannot support either a contractual or tortious bad faith claim. (*Id.*) (citing *Tomkiel*, 2014 WL 1494248, at *2).

Plaintiff clarifies in its response that it pursues this claim solely on a contractual—not tortious—breach of the covenant of good faith and fair dealing. (ECF No. 32). Furthermore, plaintiff has relevantly alleged that defendant did not offer the "actual cash value" of her vehicle as a result of defendant's purported practice of applying a 7% discount when calculating policy disbursements. (ECF No. 1 at 3–4).

This court has previously held that a breach of contract claim for violation of the explicit terms of a contract precludes a claim for contractual breach of the covenant of good faith and fair dealing because the latter claim asserts that a defendant does not violate the terms of the agreement,

James C. Mahan
U.S. District Judge

but rather its purpose.[11] *See Tomkiel*, 2014 WL 1494248, at *2 (citing *Kennedy v. Carriage Cemetery Servs.*, 727 F.Supp.2d 925, 931 (D. Nev. 2010)).

Thus, this court considers whether the instant breach of contract claim involves a violation of the terms or the spirit of the underlying contract. Here, plaintiff's claim identifies a violation of the explicit text of the contract because she contends that defendant's calculation did not consider "any difference between the actual asking price and selling price of comparable vehicles" although the 7% reduction allegedly reflected "the difference between the typical asking and selling price of [plaintiff's] vehicle." (ECF No. 1 at 27, 36).

Consequently, plaintiff has asserted how defendant failed to provide the "actual cash value" of her automobile, as required under the policy. (*Id.* at 4). Although defendant argues that it is not bound to the use of a particular valuation method, "[p]olicy terms should be viewed in their plain, ordinary and popular connotations." *Redzepagic v. CSAA Gen. Ins. Co.*, No. 2:14-cv-929-JCM-PAL, 2014 WL 4079643, at *2 (D. Nev. Aug. 18, 2014) (quoting *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986)).

Accordingly, plaintiff may challenge what she views as unjustified adjustments to the true value of the insurance settlement. *See Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 673 F. App'x 739, 741 (9th Cir. 2016) (noting that a calculation of "Actual Cash Value" requires the incorporation of an "*appropriate* depreciation" (emphasis added)); *Waterton Glob. Mining Co., LLC v. Cummins Rocky Mountain, LLC*, No. 3:14-cv-0405-RCJ-VPC, 2015 WL 714485, at *8 (D. Nev. Feb. 19, 2015) (collecting Nevada Supreme Court cases and stating "[in] Nevada . . . the value of destroyed property has been calculated based on the actual value of the property at the time and place it was destroyed, the cost of repairs to restore the property to its

---

[11] The Supreme Court of California, before introduction of a superseding statute, determined that the phrase "actual cash value" under California law meant "fair market value." *Jefferson Ins. Co. v. Superior Court*, 475 P.2d 880, 882 (Cal. 1970). To the extent this interpretation could be applied here, plaintiff has alleged there is no indication that defendant relied upon market data to produce its 7% value reduction calculation. (ECF No. 1 at 22). Moreover, defendant has not indicated that the relevant appraisers had directly considered this question, as they concluded simply that the report was sufficient under state law. (ECF No. 11-3) ("We have relied upon the appraisal report prepared by BTI Appraisal which complied with NAC 686A.680.").

former condition less depreciation, and the cost to replace the property minus depreciation." (internal quotation marks and citations omitted)).

Defendant's argument also asserts in a conclusory manner that plaintiff could bring this claim only through the total loss regulation, yet does not elucidate why. *See* (ECF No. 10). Therefore, that argument is unpersuasive.

In sum, plaintiff cannot pursue its claim for contractual breach of the covenant of good faith and fair dealing because plaintiff challenges the specific terms of the contract. *See Tomkiel*, 2014 WL 1494248, at *2. Conversely, this holding blunts defendant's argument that plaintiff has not identified any violated terms of the contract, so the breach of contract claim will survive the instant motion. (ECF No. 10).

    *d. Unjust enrichment*

> Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)) (internal quotation marks omitted).

Here, defendant asserted that plaintiff's claim for unjust enrichment is untenable because the underlying conflict in this case involves an express contract. (ECF No. 10); *see also Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). Indeed, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp.*, 942 P.2d at 187.

Plaintiff responded that unjust enrichment is a valid claim—even when there is an express contract—"if that contract . . . is unenforceable because it violates a state law and restitution serves that law's purpose." (ECF No. 32) (citing *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 (D. Nev.

**James C. Mahan**
**U.S. District Judge**

- 12 -

2013)).[12] However, defendant replies that plaintiff has not contested that the "payment of actual cash value [] is unenforceable." (ECF No. 37 at 12) (internal quotation marks omitted).

This court agrees with defendant's characterization of plaintiff's allegations. As discussed *supra*, the scope of the private remedy provision of NRS 686A.310(2) does not include questions of contract unconscionability. Next, this court's holding that plaintiff's NDTPA claim for misrepresentation is viable does not necessarily mean that the contract is unenforceable. Furthermore, the misrepresentation at issue there stemmed from defendant's alleged failure to fulfill the terms of the underlying contract when settling the insurance claim. Finally, plaintiff's breach of contract claim depends on the contract's enforceability.

Consequently, plaintiff is not attacking the enforceability of the contract. *See* (ECF No. 1). Therefore, plaintiff does not qualify for her offered exception to the rule that a written contract prevents relief under an unjust enrichment claim. *See Leasepartners Corp.*, 942 P.2d at 187.

### e. Injunctive and declaratory relief

Plaintiff's seventh claim requests both injunctive and declaratory relief. (ECF No. 1). Neither remedy is an actionable claim. *See*, *e.g.*, *Villa v. Silver State Fin. Servs., Inc.*, No. 2:10-CV-02024-LDG, 2011 WL 1979868, at *10 (D. Nev. May 20, 2011). Thus, this claim will be dismissed.

### IV. Conclusion

In sum, defendant's motion will be granted as to the claims of breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, unjust enrichment, and injunctive and declaratory relief. However, the court will not dismiss plaintiff's NRS 686A.310, NDTPA, and breach of contract claims. This court declines to consider claims or arguments involving the unconscionability of the contract terms.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's amended motion to dismiss (ECF No. 10) be, and the same hereby is GRANTED IN PART, without

---

[12] The Ninth Circuit has recently reversed the district court's unjust enrichment holding in *Sobel* without addressing the language plaintiff offers. *Sobel v. Hertz Corp.*, No. 14-17349, 2017 WL 56310, at *2 (9th Cir. Jan. 5, 2017).

James C. Mahan
U.S. District Judge

- 13 -

prejudice, as to claims four, five, six, and seven and DENIED IN PART as to claims one, two, and three.

DATED June 20, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**